1  CHAVEZ & GERTLER LLP
   Jonathan E. Gertler (Bar No. 111531)
2  Dan L. Gildor (Bar No. 223027)
   Samuel P. Cheadle (Bar No. 268595)
3  42 Miller Avenue
   Mill Valley, California 94941
4  Tel:   (415) 381-5599
   Fax:   (415) 381-5572
5
   HORNSTEIN LAW
6  Val D. Hornstein (Bar No. 133726)
   Matthew R. Harrison (Bar No. 267477)
7  One Embarcadero Center, Ste. 2860
   San Francisco, CA 94111
8  Tel:   (415) 454-1490
   Fax:   (415) 520-0414
9
   *Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

| | |
|---|---|
| WILLIAM BURDT, individually and on behalf of all others similarly situated,<br><br>           Plaintiff.<br><br>      vs.<br><br>WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>           Defendant. | Case No:  15-CV-01563-JSW<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff William Burdt ("Plaintiff"), by and through his attorneys, on behalf of himself and all others similarly situated, alleges as follows.

**INTRODUCTION**

1. This consumer class action against Whirlpool Corporation ("Whirlpool") is brought on behalf of a class of California consumers who currently own Jenn-Air model JJW2430WB02, JJW2430WP02, JJW2430WS02, JJW2430WW02, JJW2730WS02, JJW2830WB02, JJW2830WP02, JJW2830WS02, JJW2830WW02, JJW3430WB02, JJW3430WP02, JJW3430WS02, JJW3830WB02, JJW3830WP02, JJW3830WS02, JMW2430WB02, JMW2430WP02, JMW2430WS02, JMW2430WW02, JMW3430WB02, JMW3430WP02, or JMW3430WS02 ovens (the "Subject Ovens").

2. These ovens, designed, manufactured and sold by Whirlpool, are dangerous and defective. Each oven comes equipped with a roll-out rack that is intended to allow easy access to position cookware in, and remove food from, the oven, along with more traditional racks. However, the Subject Ovens, which share the same oven cavity and roll-out rack design, are not safe to operate and do not function in a way that meets the reasonable expectation of consumers who have purchased the product given that the racks provided with the oven are prone to dislodge. When a rack dislodges, it will suddenly pitch out of the oven, down and to the side, creating the grave risk that scalding hot food and cookware will fall and injure anyone in proximity to the oven, causing extensive and severe burns and permanent injury and disability. Even those spared physical injury are at risk of suffering emotional injury, including severe fright, along with inconvenience, repair expense and property damage or loss.

3. Notwithstanding Whirlpool's representations that the racks are fit for use in any position within the Subject Ovens,[1] and that the oven is free of defects and safe to operate with the racks, the racks are prone to dislodge when they are extended with cookware or food on the rack. Plaintiff is informed and believes, and on that basis alleges, that these racks are defectively designed, rendering them prone to dislodging. The oven walls in the Subject Ovens also bow out

---

[1] For instance, the manual for Plaintiff's oven states on page 10 "[t]he roll-out rack allows easy access to position and remove food in the oven. The roll-out rack will fit in all positions."

1 under the "strain" of normal use, expanding the lateral distance between the rack guides that hold
2 the racks. This extra distance causes the racks to slip off the rack guides, or pop up off the rack
3 guides, whenever the racks are extended with cookware or food on the racks. This tendency for
4 the racks to slip or dislodge poses a safety hazard to the owners of the Subject Ovens, some of
5 whom have been burned as a result of the racks dislodging and casting scalding hot food and
6 cookware at them. Notably, neither Plaintiff nor members of the class have reason to anticipate
7 that the racks may dislodge; nor is there anything that Plaintiff or members of the class could do
8 to prevent such injuries from occurring besides not using the racks and oven for their intended
9 purposes.

10     4. At all relevant times, Whirlpool knew or should have known that the racks in the
11 Subject Ovens were prone to slipping or becoming dislodged, consequently spilling food and
12 cookware that had been placed on the racks. The failures experienced by Plaintiff are not an
13 isolated event. In fact, there is video on YouTube that demonstrates exactly how easily the roll-
14 out rack can dislodge under use. Moreover, Plaintiff believes and is informed, and on that basis
15 alleges, that customers around the country have complained to Whirlpool about roll-out racks and
16 regular racks becoming dislodged during use and sought coverage pursuant to Whirlpool's
17 warranties.

18     5. By failing to warn consumers about the real nature of the racks and the Subject
19 Ovens and by failing to address the defects that cause the racks to dislodge, Whirlpool has caused
20 Plaintiff and members of the class to suffer expenses, costs, and injuries they otherwise would not
21 have borne, all in violation of California's Unfair Competition Law ("UCL"), Business and
22 Professions Code § 17200 *et seq.*, the Consumers Legal Remedies Act ("CLRA"), Civil Code
23 § 1750 *et seq.*, and the Song-Beverley Consumer Warranty Act, Civil Code § 1790 *et seq.*

24     6. Through this class action, Plaintiff seeks to enjoin the sale of the Subject Ovens
25 with the roll-out rack and to require Whirlpool to compensate Plaintiff and members of the class
26 for the losses they have incurred, including the price paid for the Subject Ovens. Plaintiff also
27 seeks attorneys' fees and costs.
28

**PARTIES**

7. Plaintiff William Burdt is an individual who purchased a Jenn-Air branded JJW3830WS oven equipped with a roll-out rack. Plaintiff is, and at all material times was, a resident of Contra Costa County, California.

8. Defendant Whirlpool Corporation is a Delaware corporation with its principal place of business in Michigan. Whirlpool designs, markets, and sells Jenn-Air ovens.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over the claims herein because Whirlpool is qualified to do business, and regularly conduct business, in California, and because the violations of law alleged herein occurred in California.

10. Venue is proper in this Court because it was removed from the Alameda County Superior Court and because the acts and omissions alleged herein took place in this district.

**FACTUAL ALLEGATIONS**

11. On or around December 20, 2013, Plaintiff moved into the Trilogy development located in Brentwood, California. In selecting from among the options available to them regarding finish and appliances, Plaintiff selected a brand new Jenn-Air model JJW3830WS double oven that came equipped with a set of racks for each oven, including a flat rack, offset rack, and roll-out rack.

12. Prior to use, Plaintiff reviewed the warranty that came with the oven as well as the manual. On December 15, 2014, Plaintiff's wife used the oven with the roll-out rack installed in position 3 to cook some chicken with gravy. When she checked on the food, the roll-out rack slipped off the rack guides, causing the casserole dish in which she was cooking the chicken to tip over and fall off of the rack, pouring scalding hot gravy on her and giving her first and second degree burns on her left arm and back. The load on the rack weighed less than 25 lbs.

13. The problem that Plaintiff experienced with the Subject Ovens and roll-out rack is not a localized phenomenon. Plaintiff is informed and believes, and on that basis alleges, that owners of the Subject Ovens across the United States have reported problems with racks becoming dislodged. Many of these individuals have called Whirlpool's consumer complaint line

1  advising Whirlpool of the problem when using the oven and the racks in their intended use.
2  Plaintiff believes and is informed, and on that basis alleges, that Whirlpool tracks customer calls
3  as well as feedback from dealerships and other repair facilities.  Whirlpool also maintains a
4  database regarding warranty service requests and tracks the sale of replacement parts including
5  replacement roll-out racks ordered after failure.  Together, the available data demonstrate that an
6  inordinate number of racks have become dislodged when used in the Subject Ovens.

7    14. Plaintiff is informed and believes, and on that basis alleges, that Whirlpool
8  engages in extensive pre-release testing that would have shown that the racks in the Subject
9  Ovens are prone to slipping or becoming dislodged and falling.  Indeed, Plaintiff is informed and
10 believes, and on that basis alleges, that Whirlpool has subsequently tested the Subject Ovens and
11 investigated their tendency to have racks slip or become dislodged under normal conditions.

12   15. Reasonable testing before selling the Subject Ovens would have revealed the
13 defects in the design.  Racks slipping off the rack guides and dislodging when used in the manner
14 they are intended to be used pose a grave safety risk that Whirlpool never discloses.  In light of
15 this safety risk, the widespread failure of the roll-out rack, the multiple reports of the problem to
16 Whirlpool and government regulators, as well as the other sources of information available to
17 Whirlpool regarding repairs and replacements, Whirlpool had exclusive knowledge superior to
18 that of the general public.  Whirlpool should have disclosed the defect and the fact that the racks
19 had an unreasonable propensity to slip or dislodge.  Had Whirlpool done so, Plaintiff and
20 members of the class would not have purchased the Subject Ovens at the price paid or would have
21 purchased entirely different ovens that do not manifest the defects that result in the racks slipping
22 or dislodging.  But Whirlpool did not do so; instead it proceeded to knowingly and purposefully
23 market and sell defective ovens and oven racks, causing harm to Plaintiff and members of the
24 class.

25   **TOLLING OF THE STATUTE OF LIMITATIONS**

26   16. The causes of action alleged herein accrued upon discovery of the unacceptably
27 high propensity of the racks slipping or dislodging within the Subject Ovens.  Plaintiff and
28 members of the class did not discover and could not have discovered the factual bases of their

4
FIRST AMENDED CLASS ACTION COMPLAINT          15-CV-01563-JSW

1  claims through the exercise of reasonable diligence because Whirlpool knowingly and actively
2  concealed the facts alleged herein. By virtue of Whirlpool's actions, Plaintiff and members of the
3  class have been kept ignorant of vital information essential to the pursuit of these claims, without
4  any fault or lack of diligence on their part.

5       17.     Despite the fact that Whirlpool knew or should have known about the defects in
6  the Subject Ovens, Whirlpool failed to inform Plaintiff and members of the class of these facts.

7       18.     Whirlpool was and is under a continuous duty to disclose to Plaintiff and members
8  of the class material information regarding the defects in the Subject Ovens. The susceptibility of
9  the racks in the Subject Ovens to slip or dislodge under intended use is material information that a
10 reasonable purchaser would consider important when selecting an oven.

11      19.     Since Plaintiff and members of the class had no way of knowing or suspecting the
12 Subject Ovens were defective and were highly susceptible to have the racks slip or dislodge,
13 Whirlpool should be estopped from relying on any statute of limitations in its defense of this
14 action.

## CLASS ACTION ALLEGATIONS

16      20.     Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure, rule
17 23(b)(2) and (b)(3) on behalf of himself and all others similarly situated as members of a
18 proposed class defined as all California residents who own Jenn-Air model JJW2430WB02,
19 JJW2430WP02, JJW2430WS02, JJW2430WW02, JJW2730WS02, JJW2830WB02,
20 JJW2830WP02, JJW2830WS02, JJW2830WW02, JJW3430WB02, JJW3430WP02,
21 JJW3430WS02, JJW3830WB02, JJW3830WP02, JJW3830WS02, JMW2430WB02,
22 JMW2430WP02, JMW2430WS02, JMW2430WW02, JMW3430WB02, JMW3430WP02, or
23 JMW3430WS02 ovens.

24      21.     Excluded from the Class are:
25           (a)     officers, directors, and employees of Whirlpool, its subsidiaries, affiliates,
26                  and any entity in which Whirlpool has a controlling interest, authorized
27                  Whirlpool dealers and any legal representative, heir, successor, or assignee
28                  of Whirlpool;

        (b)     counsel, and the immediate families of counsel, who represent Plaintiff in this action;

        (c)     the judge presiding over this action;

        (d)     jurors who are impaneled to render a verdict on the claims alleged in this action; and

        (e)     any individual asserting claims for personal injury that resulted from slipped or dislodged racks in Subject Ovens.

22.     The members of the class as defined are so numerous that joinder of all claims would be impracticable. While the exact number of class members is unknown to Plaintiff at this time, Plaintiff is informed and believes, and on that basis alleges, that thousands of persons are members of the class. Accordingly, the members of the proposed class are so numerous that joinder of all members would be impracticable. The disposition of the claims through this class action will benefit both the parties and the Court. The exact number and identity of the members of the proposed class are readily identifiable from Whirlpool's and other's business records, which will demonstrate who has purchased and/or installed the Subject Ovens.

23.     There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action. Common questions of law and fact exist as to all members of the class. These common questions predominate over the questions affecting only individual class members. They include, but are not limited to, the following:

        (a)     Whether the Subject Ovens are defective in allowing the racks to slip or dislodge when extended with cookware and food;

        (b)     Whether Whirlpool has made and will continue to make false and/or misleading statements of fact or has omitted and will continue to omit material facts to members of the class and the public concerning the Subject Ovens;

        (c)     If so, whether Whirlpool's false and/or misleading statements of fact and concealment of material facts concerning the performance and reliability of the Subject Ovens were likely to deceive the public;

1    (d)    Whether the Subject Ovens fail to conform to Whirlpool's product specifications;

2    (e)    Whether Whirlpool concealed from Plaintiff and members of the class that the Subject Ovens do not conform to Whirlpool's product specifications;

3    (f)    Whether, by the misconduct alleged in this action, Whirlpool has violated:
   (i)    Business & Professions Code § 17200 *et seq.*;
   (ii)   the Consumer Legal Remedies Act;  and
   (iii)  the Song-Beverly Consumer Warranty Act.

4    (g)    Whether, by selling and marketing the Subjective Ovens, Whirlpool has breached a implied warranties of fitness and merchantability; and

5    (h)    Whether, as a result of Whirlpool's misconduct as alleged herein, Plaintiff and members of the class are entitled to damages, restitution, injunctive relief, and other remedies, and, if so, the amount and nature of such relief.

24.    Plaintiff's claims are typical of the claims of the other members of the class.  The Subject Ovens all share the same oven cavity and roll-out rack design.  Moreover, Whirlpool's conduct has caused Plaintiff and members of the class to sustain the same or substantially similar injuries and damages.  Plaintiff has no interests antagonistic to the interests of the other members of the class.  Plaintiff and all members of the class have sustained economic injury, including ascertainable loss and injury in fact, arising out of Whirlpool's violations of law as alleged herein.

25.    Plaintiff will fairly and adequately represent and protect the interests of the members of the class.  Plaintiff is a member of the class and does not have any conflict of interest with other class members.  Plaintiff has retained and is represented by competent counsel who are experienced in complex class action litigation, including consumer class actions such as the present action.

26.    The nature of this action makes a class action the superior and appropriate procedure to afford relief for the wrongs alleged herein.  There will be no difficulty in the management of this class action.  Individualized litigation presents the potential for inconsistent or contradictory judgments.  A class action presents far fewer management difficulties and

provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### FIRST CAUSE OF ACTION
**(Violation of the Song-Beverly Consumer Warranty Act)**

27.     Plaintiff re-alleges and incorporates by reference each of the foregoing allegations.

28.     The Song-Beverly Consumer Warranty Act, Civil Code section 1790, *et seq.*, defines the main obligations in California for manufacturers of consumer goods.  Specifically, the act provides for implied warranties of fitness and merchantability, as well as express warranties, that cannot be waived.  The act "is a remedial measure intended for the protection of consumers and should be given a construction consistent with that purpose." (*Brand v. Hyundai Motor America* (2014) 173 Cal.Rptr.3d 454, 459.)

29.     The Subject Ovens and racks are "consumer goods" as that term is defined by the Song Beverly Consumer Warranty Act, Civil Code section 1791, subdivision (a).  Plaintiff and members of the class have used the Subject Ovens and racks, or purchased the Subject Ovens and racks for use, in primarily personal, family, or household purposes.

30.     At all relevant times, Defendant Whirlpool has been a company engaged in the business of designing, manufacturing and selling the Subject Ovens to Plaintiff and members of the class as well as the general public.  Jenn-Air is a brand of oven manufactured and sold by Whirlpool.

31.     At all relevant times, Plaintiff and members of the class purchased and used the Subject Ovens and associated racks with the reasonable expectation that the Subject Ovens and racks were fit to be used for the ordinary and intended purpose of allowing easy access to position cookware in, and remove food from, the oven safely and securely.  Defendant Whirlpool has sold the Subject Ovens with the racks with the knowledge that the Subject Ovens and racks would be used for this particular purpose.  Moreover, Defendant Whirlpool—as a manufacturer of specialty and luxury appliances—has had reason to know that buyers such as Plaintiff and members of the class—who are simple consumers—would rely on Whirlpool's skill or judgment to furnish suitable goods.

32. As part of the sale of the Subject Ovens, Whirlpool never provided Plaintiff or members of the class with a conspicuous writing attached to the Subject Ovens that clearly informed Plaintiff or members of the class prior to the sale that the Subject Ovens were being sold on an "as is" or "with all faults" basis. In fact, every sale of the Subject Ovens was accompanied by a manufacturer's warranty that warranted against defects in materials or workmanship.

33. Notwithstanding the warranties of fitness and merchantability, the Subject Ovens, when delivered to Plaintiff and the class, were defective in design and/or materials and workmanship. These defects caused the racks to slip, dislodge and fall within the warranty period even though the ovens and racks were used according to the instructions and in their intended and ordinary use. As a result of the defects in the Subject Ovens and racks, the racks slip and dislodge in a way that make them unfit to fulfill the ordinary purposes for which the ovens are purchased and used. When the racks slip and dislodge, they can injure those using the oven, which subsequently prevents the ovens from being used as intended.

34. The defects experienced by Plaintiff and members of the class with the Subject Ovens have substantially impaired and continue to substantially impair the use and value of the Subject Ovens and the safety of Plaintiff and members of the class. As a direct and proximate result of Whirlpool's willful violation of its obligations under the Song-Beverly Consumer Warranty Act, Plaintiff and members of the class have suffered damages, including the right of replacement or reimbursement, including the cost of repair as well as incidental and consequential damages (such as damage to cookware and the environs surrounding the ovens) and attorneys' fees which Plaintiff and members of the class have incurred and will continue to incur in order to protect their rights in this matter.

WHEREFORE, Plaintiff prays for relief as set forth below.

### SECOND CAUSE OF ACTION
**(Violation of the Consumers Legal Remedies Act)**

35. Plaintiff re-alleges and incorporates by reference each of the foregoing allegations.

36. The Consumers Legal Remedies Act, Civil Code section 1750 *et seq*. ("CLRA") protects consumers from unconscionable, fraudulent and deceptive sales practices. The act's

1  purpose is to provide efficient and economical procedures to secure such protection.  (Civil Code

2  § 1760.)  In that connection, the CLRA entitles "[a]ny consumer who suffers any damage as a

3  result of the use or employment by any person of a method, act or practice declared to be

4  unlawful by section 1770" to "bring an action against that person to recover actual damages,

5  injunctive relief, restitution of property, punitive damages, and any other relief the court deems

6  proper."  (*Wang v. Massey Chevrolet* (2002) 118 Cal.Rptr.2d 770, 778.)

7        37.    At all relevant times:

8             (a)    The Subject Ovens and racks have been and will continue to be tangible

9  chattels that Whirlpool has designed, manufactured, and marketed for

10  personal, family, or household purposes that are intended to be purchased;

11             (b)    Plaintiff and members of the class are individuals who have purchased the

12  Subject Ovens for personal, family or household purposes;

13             (c)    The purchase of the Subject Ovens from Whirlpool constituted an

14  agreement between Whirlpool on the one hand and Plaintiff and members

15  of the class on the other; and

16             (d)    Defendant Whirlpool is a corporation.

17        38.    In offering the Subject Ovens and racks for sale to the public, Whirlpool markets

18  the Subject Ovens as luxury appliances known for sophisticated design, innovative technology,

19  and exceptional—and "unprecedented" performance.  Whirlpool moreover has represented, and

20  will continue to represent, directly or by implication, through the Subject Oven's warranty,

21  manuals, and marketing materials, that the Subject Ovens do not have any defects that would

22  substantially affect consumers' ability to use them for their intended purpose; that the Subject

23  Oven and racks are safe to use in any position in the Subject Ovens.  Prior to using the Subject

24  Oven, Plaintiff read the various brochures and instructions that came with the oven.

25        39.    Notwithstanding Whirlpool's representations in the Subject Oven's warranty,

26  manuals, and marketing materials, the Subject Ovens have been and will continue to be inherently

27  and unreasonably dangerous given that defects in the Subject Ovens and the racks will cause the

28  racks to slip and dislodge, causing scalding hot food and cookware to spill out of the oven and

1  onto the people using the oven.  That the roll-out racks may slip and dislodge is a material fact
2  that Plaintiff and reasonable consumers would deem important in determining whether to
3  purchase and/or use the roll-out rack with the Subject Ovens.
4      40.    At all relevant times, Whirlpool has known that Plaintiff and members of the class
5  did not know or could not have reasonably discovered the problem prior to purchasing the Subject
6  Ovens.  Whirlpool has had a duty to disclose the material facts clearly and conspicuously at the
7  time of sale given (1) the materiality of the information; (2) the safety risk posed by the defect;
8  (3) Whirlpool's affirmative representations otherwise about the safety of using the racks with the
9  ovens; (4) Whirlpool's exclusive knowledge of material facts not known to Plaintiff and members
10 of the class; and (5) Whirlpool's active concealment of material facts from Plaintiff and members
11 of the class.
12     41.    By virtue of this ongoing practice and course of conduct, Whirlpool has violated
13 and will continue to violate Civil Code section 1770, subdivision (a)(7), by representing that the
14 Subject Ovens are of a particular standard or quality when they are not of that standard or quality.
15     42.    By virtue of this ongoing practice and course of conduct, Whirlpool has violated
16 and will continue to violate Civil Code section 1770, subdivision (a)(5), by representing that the
17 Subject Ovens have characteristics, uses and benefits which they do not have.
18     43.    As a result of Whirlpool's practices, Plaintiff and members of the class have
19 suffered and will continue to suffer injury in fact and lost money or property in amounts to be
20 proven at trial.
21     44.    Whirlpool's violations of the Civil Code section 1770 present a continuing threat
22 to Plaintiff and members of the public in that Whirlpool continues to engage in the above-
23 referenced acts and practices, and unless enjoined from doing so by this Court, will continue to do
24 so.  Had Plaintiff and members of the class been informed of the Subject Ovens' tendency to have
25 the racks slip and dislodge, they would not have purchased the Subject Ovens at the premium
26 price advertised for the purportedly luxury appliance.  At the very least, Plaintiff and members of
27 the class would have purchased different ovens.
28

45. On March 3, 2015, Plaintiff sent Whirlpool written notice of the violations of Civil Code section 1770 alleged above and provided Whirlpool with an opportunity to correct or otherwise rectify the problems alleged herein.  Whirlpool has not availed itself of this opportunity.

46. Accordingly, Plaintiff seeks an order awarding actual damages, equitable relief, as well as an award of attorneys' fees and costs pursuant to Civil Code section 1780, subdivisions (a) and (e).

WHEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CLAIM FOR RELIEF
(Violation of the Unfair Competition Law*)*

47. Plaintiff re-alleges and incorporates by reference each of the foregoing allegations.

48. The purpose of the Unfair Competition Law, Business & Professions Code section 17200 *et seq.* ("UCL"), "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services."  (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.)  In that connection, the UCL prohibits unfair competition, which is defined as any unlawful, unfair or fraudulent business act or practice.  Unfair competition also includes "unfair, deceptive, untrue or misleading advertising."  (Bus. & Prof. Code § 17200; *accord Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373, 1381.)  The UCL is equitable in nature and authorizes courts to order injunctive and/or declaratory relief and any other equitable relief to remedy violations.

49. Whirlpool's conduct as alleged above has been and will continue to be unlawful in that the conduct constitutes and will continue to constitute a violation of the CLRA and the Song-Beverly Consumer Warranty Act as alleged herein.

50. Whirlpool's conduct as alleged above has been and will continue to be unfair in that the harm to Plaintiff and members of the class arising from Whirlpool's conduct outweighs the utility, if any, of the conduct alleged above.

51. Whirlpool's conduct as alleged above has been and will continue to be fraudulent and likely to deceive reasonable consumers in that Whirlpool has omitted and/or failed to disclose

1  in any of its warranties, manuals, and marketing materials, and will continue to omit and/or fail to
2  disclose in any of its warranties, manuals, and marketing materials, material facts regarding the
3  Subject Ovens' tendency to cause the roll-out racks to slip and dislodge, and that such tendency
4  creates a safety hazard that necessitates costly replacement of the Subject Ovens.  Whirlpool's
5  failure to disclose the Subject Ovens' tendency for the racks to slip or dislodge constitutes
6  deception by omission.  Whirlpool has had a duty to disclose these material facts yet there is no
7  mention of this tendency for the racks to slip or dislodge in any of the marketing and promotional
8  materials and user manuals for the Subject Ovens.

9      52.    The facts concealed and omitted are material facts that a reasonable consumer would have considered important in deciding whether or not to purchase his or her oven.  Had Plaintiff and members of the class been informed of the Subject Ovens' tendency to have the racks slip or dislodge, they would not have purchased the Subject Ovens at the price paid or would have purchased different ovens.

14      53.    As a result of Whirlpool's practices, Plaintiff and members of the class have suffered and will continue to suffer injury in fact and have lost money or property.  As a direct and proximate result of the acts and practices alleged above, pursuant to California Business & Professions Code section 17203, Plaintiff and the class are therefore entitled to:

18      (a)    preliminary and permanent injunctive relief;
19      (b)    restitution of all monies paid as a result of Whirlpool's deceptive and unlawful practices, including, but not limited to, the cost of repair and replacement of the Subject Ovens and any other attendant damage as well as disgorgement of all profits derived from the sale of the Subject Ovens beyond the fair value of the Subject Ovens given the defects;
24      (c)    interest as allowable by law; and
25      (d)    recovery of Plaintiff's attorneys' fees and costs and expenses incurred in the filing and prosecution of this action, pursuant to, *inter alia*, California Code of Civil Procedure section 1021.5.

28    WHEREFORE, Plaintiff prays for relief as set forth below.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment in favor of himself and the proposed class for the following:

1. an order certifying the proposed class and appointing Plaintiff and his counsel to represent the class;
2. injunctive and declaratory relief as pled or as the Court may deem proper;
3. an award of damages and restitution in favor of Plaintiff and the class;
4. interest as allowable by law;
5. an award of reasonable attorneys' fees as provided by applicable law;
6. all costs of suit; and
7. such other and further relief as this Court deems just and proper.

Dated: April 17, 2015

Respectfully submitted,
CHAVEZ & GERTLER LLP
HORNSTEIN LAW

By:  */s/ Dan L. Gildor*

Dan L. Gildor
*Attorneys for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 17, 2015, a true and correct copy of the foregoing document was served via ECF upon all counsel of record.

*/s/ Dan L. Gildor*
Dan L. Gildor