**United States District Court**
For the Northern District of California

1

2

3

4

5

6          IN THE UNITED STATES DISTRICT COURT

7

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   WILLIAM BURDT,

10          Plaintiff,                         No. C 15-01563 JSW

11   v.

12   WHIRLPOOL CORPORATION,                    **ORDER GRANTING MOTION TO
                                               DISMISS**
13          Defendant.

14   _____/

15          Now before the Court is the motion to dismiss filed by defendant Whirlpool Corporation

16   ("Whirlpool"). Having carefully reviewed the parties' papers and considered their arguments

17   and the relevant legal authority, the Court GRANTS Whirlpool's motion to dismiss with leave

18   to amend.

19                            **BACKGROUND**

20          On or around December 20, 2013, Plaintiff moved into the Trilogy Development in

21   Brentwood, California. (First Amended Complaint ("FAC"), ¶ 11.) Plaintiff selected a Jenn-Air

22   model JJW3830WS double oven from a list of appliances available to residents. (*Id.*) The oven

23   was equipped with a set of racks that included a roll-out rack, offset rack, and flat rack. (*Id.*)

24          On December 15, 2014, Plaintiff's wife used the roll-out rack to cook. When she

25   checked on the food, the roll-out rack slipped off the rack guides and collapsed, causing the dish

26   in which she was cooking to tip over. (*Id*. at ¶ 12.) The contents of the dish spilled onto

27   Plaintiff's wife and gave her first and second degree burns on her left arm and back. (*Id.*) The

28   load on the rack weighed less than twenty-five pounds. (*Id.*)

Plaintiff brings this proposed class action on behalf of himself and other Jenn-Air oven owners. (*Id.* at ¶ 20.) Plaintiff alleges that owners of other Jenn-Air model ovens ("Subject Ovens") have reported problems with oven racks becoming dislodged. (*Id.* at ¶ 13.) Plaintiff further alleges that these individuals have called Whirlpool's customer complaint line to advise Whirlpool of the problem. (*Id.*) Whirlpool tracks customer complaints and feedback from dealerships and other repair facilities. (*Id.*) Whirlpool also tracks warranty requests and the sale of replacement parts such as the roll-out racks at issue here. (*Id.*) In addition, there is a YouTube video that demonstrates how the roll-out rack can dislodge. (*Id.* at ¶ 4.) Whirlpool also engages in pre-release testing and has subsequently investigated the Jenn-Air model's tendency to have racks slip or become dislodged under normal conditions. (*Id.* at ¶ 14.) Plaintiff contends that Whirlpool's testing would have shown that the Subject Ovens are defective and the racks have a tendency to slip or become dislodged under normal conditions. (*Id.* at ¶¶ 14, 15.)

Dislodged oven racks pose a safety risk that Whirlpool does not disclose. (*Id.* at ¶ 15.) Plaintiff alleges that Whirlpool had knowledge superior to that of the general public of the safety risk and contends that Whirlpool should have disclosed the defect. (*Id.*) Plaintiff also alleges that Whirlpool knowingly and purposefully sold the defective ovens. (*Id.*) If Whirlpool had disclosed the defect, Plaintiff alleges he and members of the class would not have purchased the Subject Ovens or would not have purchased them at the price paid. (*Id.*)

Based upon these allegations, Plaintiff brings this proposed class action for violations of the Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*, the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), California Civil Code §§ 1790, *et seq.*, and the California Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq*. Whirlpool moves to dismiss based on Federal Rules of Civil Procedure 12(b)(6) and 9(b). The Court shall address further facts as necessary in the order.

United States District Court

For the Northern District of California

**ANALYSIS**

**A.      Legal Standards on Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. "Dismissal is proper where there is no cognizable legal theory or an absence of sufficient facts to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Under *Twombly*, plaintiffs must move "their claims across the line from conceivable to plausible." *Id.* at 570. In order to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). If the allegations are insufficient to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Service*, 911 F.2d 242, 247 (9th Cir. 1990). "The standard for granting leave to amend is generous." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 701 (9th Cir. 1990)). If there is "no evidence of delay, prejudice, bad faith, or previous amendments . . . leave to amend turns on whether amendment would be futile." *Id.*

In addition, when a plaintiff alleges fraud, Federal Rule of Civil Procedure 9(b) requires the plaintiff to state with particularity the circumstances constituting fraud, including the "'who,

United States District Court

For the Northern District of California

1    what, when, where, and how'" of the charged misconduct.  *See United States ex rel Ebeid v.*

2    *Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba Geigy Corp. USA*, 317 F.3d

3    1097, 1106 (9th Cir. 2003)). "[T]he plaintiff must set forth what is false or misleading about a

4    statement, and why it is false." *Ebeid*, 616 F.3d at 998 (omitting internal quotations and

5    citations).

6    **B.      Whirlpool's Motion to Dismiss.**

7                **1.      Plaintiff Fails to State a Claim Under the Consumer Legal Remedies Act
                          Because He Did Not Sufficiently Allege That Defendant Was Aware of a
8                          Defect at the Time of Sale.**

9            Whirlpool asserts that Plaintiff fails to allege that the company had pre-sale knowledge

10   of the alleged defect. Plaintiff alleges that Whirlpool violated the CLRA "by representing that

11   the Subject Ovens are of a particular standard or quality when they are not of that standard or

12   quality," and "by representing that the Subject Ovens have characteristics, uses and benefits

13   which they do not have." (FAC, ¶¶ 41-42.) Plaintiff claims that Whirlpool "actively concealed"

14   the material fact that the oven was defective and that the roll-out racks were prone to dislodge.

15   (*Id.* at ¶ 40.) Plaintiff alleges that if he had "been informed of the Subject Ovens' tendency to

16   have the racks slip and dislodge, [he] would not have purchased the [oven] at the premium price

17   advertised for the purportedly luxury appliance." (*Id.* at ¶ 44.)

18           "The CLRA prohibits 'unfair methods of competition and unfair or deceptive acts or

19   practices undertaken by any person in a transaction intended to result or which results in the

20   sale or lease of goods or services to any consumer.'" *Wilson*, 668 F.3d at 1140 (citing Cal. Civ.

21   Code § 1770(a)). "Conduct that is 'likely to mislead a reasonable consumer' violates the

22   CLRA." *Id.* (citing *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006)).

23   Provisions of the CLRA prohibit "representing that goods or services have . . . characteristics . .

24   . which they do not have," and "representing that goods or services are of a particular standard,

25   quality, or grade . . . if they are another." *Id.* at 1141 (quoting Cal. Civ. Code § 1770(a)(5), (7)).

26           A failure to disclose a material fact can constitute actionable fraud under the CLRA in

27   four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2)

28   when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3)

when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1086, 1095 (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)). "In order for the concealed fact to be 'material,' plaintiffs had to show that 'had the omitted information been disclosed, one would have been made aware of it and behaved differently.'" *Wilson*, 668 F.3d at 1142 (quoting *Falk*, 496 F. Supp. 2d at 1095)). "Materiality for CLRA claims, is judged by the effect on a 'reasonable consumer.'" *Falk*, 496 F. Supp. 2d at 1095 (citing *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003)). "Information is material if its disclosure would have caused a reasonable consumer to behave differently." *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litigation*, 758 F. Supp. 2d 1077, 1095 (S.D. Cal. 2010) (citing *Falk*, 496 F. Supp. 2d at 1095). Under the CLRA, "materiality is also linked to safety considerations." *Id.* at 1096. If the materiality factors from *Falk* are applied, "for the omission to be material, the failure [to disclose] must [still] pose safety concerns." *Wilson*, 668 F.3d at 1142 (citing *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010)). To survive a motion to dismiss, plaintiffs must "sufficiently allege a causal connection between the alleged design defect and the alleged safety hazard." *Id.* at 1143.

"California courts have generally rejected a broad obligation to disclose." *Id.* at 1141. "Under the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." *Id.* at 1145 (citing *In re Sony HDTV*, 758 F. Supp. 2d at 1095 ("Sony had no duty to disclose facts of which it was unaware.") "In order to state a claim under the CLRA for failing to disclose a safety defect, Plaintiffs must allege 1) the existence of a design defect; 2) the existence of an unreasonable safety hazard; 3) a causal connection between the alleged defect and the alleged safety hazard; and 4) that Defendant knew of the defect at the time a sale was made." *Grodzitsky v. American Honda Motor Co., Inc.*, 2013 WL 690822, at *6 (C.D. Cal. Feb. 19, 2013) (citing *Wilson*, 668 F.3d at 1143-46.) "By themselves, [customer complaints] are insufficient to show that [the manufacturer] had knowledge [of the defect]." *Wilson*, 668 F.3d at 1147 (quoting *Berenblat v. Apple, Inc.*, 2010

WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010)). "Courts have rejected undated customer complaints offered as a factual basis for a manufacturer's knowledge of a defect because they provide no indication whether the manufacturer was aware of the defect at the time of sale." *Id.*

Plaintiff cites to a line of California district court cases that have generally held that the totality of detailed allegations of a defendant's access to sources such as pre-sale test data, consumer complaints, warranty data, dealer complaints, repair data, and data regarding the purchase of replacement parts are sufficient to show a defendant's pre-sale knowledge of a defect and survive a motion to dismiss. *See Cirulli v. Hyundai Motor Co.*, 2009 WL 5788762, at *4 (C.D. Cal. June 12, 2009) (holding that plaintiff sufficiently alleged that defendant knew of the defect at the time the defective product was sold because defendant constantly tracked National Highway Traffic Safety Administration data prior to the date of sale that would have explicitly disclosed the defect); *Avedisian v. Mercedes-Benz USA, LLC*, 2013 WL 2285237, at *7 (C.D. Cal. May 22, 2013) (holding that plaintiff sufficiently alleged defendant's pre-sale knowledge of an alleged defect when consumer provided dated customer complaints along with other allegations that defendant learned of the alleged defect through pre-release testing data, dealer complaints, further testing, and warranty data among other sources); *Falk*, 496 F. Supp. 2d at 1096 (holding that a dated record of complaints were sufficient to demonstrate defendant's superior knowledge of an alleged defect).

In *Wilson*, a case distinguishable from Plaintiff's cited cases, the plaintiffs alleged that the defendant had pre-sale knowledge of a design defect because the company had "'access to the aggregate information and data regarding the risk of overheating' and there had been another lawsuit involving the same defect on a different model of laptop computers." *Wilson*, 668 F.3d at 1146. This allegation was deemed to be "speculative" because it did not "suggest how any tests or information could have alerted HP to the defect." *Id.* at 1147. The plaintiffs had "also submitted several customer complaints to support their allegation that HP had knowledge of the defect." *Id.* at 1146. The submitted complaints were undated or were made subsequent to the plaintiffs' purchase of the allegedly defective product. *Id.* at 1148. The Ninth

1  Circuit held that these allegations were insufficient to support the inference that the defendant

2  knew about a design defect at the time of the sale of the product. *Id.* at 1145.

3      Similarly to *Wilson*, here Plaintiff alleges that "individuals have called Whirlpool's

4  customer complaint line advising Whirlpool of the problem when using the oven and the racks

5  in their intended use." (FAC, ¶ 13.) Plaintiff does not submit any specific complaints and does

6  not provide any dates for the alleged and unspecified numerous complaints. Plaintiff also claims

7  that Whirlpool engaged in "extensive pre-release testing that would have shown that the racks

8  in the Subject Ovens are prone to slipping or becoming dislodged and falling" without

9  specifically suggesting how any tests would have alerted Whirlpool to the alleged defect. (*Id*. at

10 ¶ 14.) Without the necessary factual support, Plaintiff's allegations are merely speculative.

11 Furthermore, without any dates attached to the supposed number of complaints lodged with

12 Whirlpool, Plaintiff cannot show pre-sale knowledge of the alleged defect. *See, e.g., Wilson*,

13 668 F.3d at 1147.

14      Plaintiff cites to a number of cases that are factually distinguishable from the present

15 matter. For example, in *Cirulli*, the plaintiff alleged that the defendant "constantly tracked" the

16 NHTSA database for reports of defective sub-frames from one of its cars and that this source

17 would have informed the defendant that the specific model at issue in the case was

18 "experiencing unusually high levels of sub-frame deterioration, steering control arm separation,

19 steering loss, and highway accidents." *Cirulli*, 2009 WL 5788762, at *4. Here, Plaintiff does not

20 allege Whirlpool's awareness with specificity. Instead, Plaintiff merely alleges that Defendant

21 "engages in extensive pre-release testing that would have shown that the racks in the Subject

22 Ovens are prone to slipping or becoming dislodged." (FAC, ¶ 13.) Plaintiff does not provide

23 any details about or dates of the alleged tests or exactly what the tests would have shown. Pre-

24 release testing is common and Plaintiff must allege more than an undetailed assertion that the

25 testing must have revealed the alleged defect. Otherwise, any consumer could bring a CLRA

26 claim merely by asserting that a manufacturer had knowledge of an alleged defect from its pre-

27 release testing. In addition, the fact that the alleged defect did not appear until eleven months

28

United States District Court

For the Northern District of California

1   after purchase suggests that the pre-release testing may not have revealed an alleged defect that

2   only appeared after such extended use. (*See id.* at ¶ 12.)

3        In *Avedisian*, the plaintiff alleged that the defendant learned about a defect in their

4   product from "pre-release testing data, consumer complaints, dealer complaints, further testing,

5   warranty data, goodwill date, repair date, and parts purchase information." *Avedisian*, 2013 WL

6   2285237, at *7. However, in *Avedisian*, the plaintiff presented specific consumer complaints

7   that pre-dated the sale of the alleged defective product whereas here Plaintiff only presents a

8   single specific instance of defect in the form of a YouTube video that was not dated in

9   Plaintiff's complaint. *See id.*

10       Plaintiff also relies on *Falk* to show that a record of customer complaints can create the

11  inference that Defendant had knowledge of the defect. However, *Falk* can be distinguished from

12  the present matter. In *Falk*, the plaintiff alleged that there was a record of complaints to

13  defendant between 2003 and 2007 that demonstrated that the defendant was aware of the

14  alleged defect. *Falk*, 496 F. Supp. 2d at 1096. However, unlike the present matter, the

15  complaints in *Falk* were dated and they were considered in conjunction with other indications

16  that the defendant had knowledge of the defect. Additionally, the plaintiffs in *Falk* "present[ed]

17  several pages of quotations containing Internet complaints." *Id.* In contrast, here Plaintiff only

18  referenced a single undated YouTube video that demonstrated the alleged defect and the bare,

19  undated assertion that "customers around the country have complained to Whirlpool about roll-

20  out racks and regular racks becoming dislodged during use." (FAC, ¶ 4.)

21       In light of *Wilson*, the Court finds that Plaintiff has failed to state a claim under the

22  CLRA because he did not plead sufficient specific facts to allege that Whirlpool was aware of

23  the alleged defect prior to the sale of the Subject Ovens. The Court grants Whirlpool's motion

24  to dismiss Plaintiff's CLRA claim with leave to amend to plead specific facts indicating

25  Whirlpool's pre-sale knowledge of the defect.

26

27

28

United States District Court

For the Northern District of California

**2.      Plaintiff Fails to State a Claim Under the Song-Beverly Consumer Warranty Act.**

Whirlpool moves to dismiss Plaintiff's claim under the Song-Beverly Act on the basis that Plaintiff cannot establish a plausible breach of the express warranty, the implied warranty of merchantability, or the implied warranty of fitness for a particular purpose. The main issue is whether the complaint sets forth facts that allow the plausible inference that the Subject Ovens are unfit for their ordinary purpose of cooking food. While Plaintiff asserts a claim for violations of the Song-Beverly Act, the complaint is unclear as to which provisions of the law Plaintiff contends Whirlpool allegedly violated.[1]

The Song-Beverly Consumer Warranty Act is a "remedial measure intended for the protection of consumers and should be given a construction consistent with that purpose." *Brand v. Hyundai Motor America*, 226 Cal. App. 4th 1538, 1545 (2014). "The Act provides for both express and implied warranties." *Id.* "The substantive elements are the same under the Song-Beverly Act and the [federal] Magnuson-Moss Act." *Birdsong v. Apple, Inc.*, 590 F. 3d 955, 958 n.2 (9th Cir. 2009). "Under both, the court applies state warranty law." *Id.*

The implied warranty of merchantability requires that "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. An implied warranty of merchantability applies to all retail sales of consumer goods in California "unless specific disclaimer methods are followed." *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1241 (C.D. Cal. 2011). "The Song-Beverly Consumer Warranty Act provides a right of action for a buyer to recover damages and other relief when there has been a breach of the implied warranty of merchantability." *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 25 (2007). The implied warranty of merchantability requires that the goods "(1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purpose

---

[1] For the purposes of this motion, the Court presumes that Plaintiff intended to state a claim for breach of the implied warranty of merchantability. The Court grants Plaintiff leave to file an amended complaint.  Should Plaintiff elect to amend his complaint, the specific provision alleged to be violated must be pled with particularity.

United States District Court

For the Northern District of California

for which those goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmation of fact made on the container or label." *Birdsong*, 590 F.3d at 958 n.2 (citing Cal. Civ. Code §1791.1). A "core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Brand*, 226 Cal. App. 4th at 1546 (quoting *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1303 (2009)). "Such fitness is shown if the product is 'in safe condition and substantially free of defects.'" *Id.* (quoting *Mexia*, 174 Cal. App. 4th at 1303). "A plaintiff claiming breach of implied warranty of merchantability must show that the product 'did not possess even the most basic degree of fitness for ordinary use.'" *Cholakyan*, 796 F. Supp. 2d at 1241 (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003)). "The warranty arises by operation of law" and is accordingly applicable in absence of a formal contract. *Brand*, 226 Cal. App. 4th at 459.

There are many cases where plaintiffs purchase a car and subsequently claim a breach of the implied warranty of merchantability based on an alleged defect. In these cases, courts have generally held that the implied warranty is "simply a guarantee that [the car] will operate in a safe condition and substantially free of defects. Thus, where a car can provide safe, reliable transportation, it is generally considered merchantable even if certain functions of the car—like a navigation or entertainment system—do not operate as promised." *T&M Solar and Air Conditioning, Inc. v. Lennox International Inc.*, 2015 WL 1289497, at *15 (N.D. Cal. Mar. 20, 2015) (citing *In re MyFord Touch Consumer Litigation*, 46 F. Supp. 3d 936, 980 (N.D. Cal. 2014)).

Plaintiff's cited cases are distinguishable because they involve defective products that present inevitable safety problems with each use or involve products that are not fit for their ordinary purpose because of substantial defects that consistently impair their entire use over an extended period of time. In *Isip*, the plaintiff's new Mercedes exhibited a loud engine noise that signaled improper function, constant clanking noises from the breaks, fluid leaks, and emitted excessive white smoke. *Isip*, 155 Cal. App. 4th at 22. The plaintiff reduced her driving due to safety concerns. *Id.* The California Court of Appeal held that "a vehicle that smells, lurches,

clanks, and emits smoke over an extended period of time is not fit for its intended purpose." *Id.* at 27.

In *Avedisian*, the plaintiff and her passengers sustained cuts on their arms and hands while using an allegedly defective vehicle. *Avedisian*, 2013 WL 2285237, at *1. These injuries resulted from contact with allegedly defective chrome plated interior trim pieces. *Id.* The chrome coating had sharp edges that were allegedly the result of a defect that had caused the coating to "flake, crack, and peel." *Id.* The court held that even though the vehicle was functional, it was not in safe condition because the plaintiff asserted that there was a danger of lacerated fingers and that she had consistently sustained cuts while driving because of the alleged defect. *Id.* at *5.

Similarly in *Stearns*, where the plaintiffs found mold growth on their beds, the court held that "the fact that a person still may sleep on a moldy bed does not bar as a matter of law a claim for breach of the implied warranty of merchantability." *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009). Furthermore, in *Roberts*, the plaintiffs alleged that they bought a drier with a defect that caused it to start a fire that resulted in extensive property damage. *Roberts v. Electrolux Home Products, Inc*, 2013 WL 7753579, at *1 (C.D. Cal. Mar. 4, 2013). The court held that the plaintiff stated a claim for breach of the implied warranty of merchantability because the alleged design defect caused the lint to accumulate in a manner that created a fire hazard. *Id.* at *5. Due to this fire hazard, although the drier still functioned, the drier was not fit for its ordinary purpose to safely dry clothes in a residential setting. *Id.*

In the present case, Plaintiff has only alleged a single instance of impaired use. Plaintiff can still use the allegedly defective product for its intended ordinary purpose in a safe manner by using the two other racks in the oven. The ability to operate the product safely distinguishes the present matter from Plaintiff's cited cases. In *Isip*, *Avedesian*, *Stearns*, and *Roberts*, the alleged defect made it impossible to operate the goods in a safe condition and thus the courts found the goods were not fit for their ordinary purpose. While the defect need not preclude all uses of the product in order to signal a breach of the implied warranty of merchantability, it is

11

1    required that the product "not possess even the most basic degree of fitness for ordinary use."

2    *See Cholakyan*, 796 F. Supp. 2d at 1241. Here, Plaintiff did not allege that the two other oven

3    racks were defective or unsafe. The present case also differs from Plaintiff's cited precedent in

4    that the alleged defect has not occurred over an extended period of time but during only one

5    single instance. *See id.* at 1243 (quoting *Isip*, 155 Cal. App. 4th at 27). Although Plaintiff

6    alleges a safety risk, he alleges a risk that does not make the whole product unfit to serve its

7    ordinary purpose of cooking food. Even if the oven's roll-out rack does not operate as promised,

8    the product does not breach the implied warranty of merchantability on that basis alone. *See*

9    *T&M Solar and Air Conditioning*,  2015 WL 1289497, at *15. Plaintiff used the Subject Oven

10   for eleven months without incident and failed to provide specific examples of other incidents

11   that support the inference that the oven cannot work in a safe manner.

12        Plaintiff fails to state a Song-Beverly claim because, according to the allegations in the

13   complaint, the product is fit for its ordinary purpose and the alleged defect does not pose an

14   ongoing safety risk. Based on the relevant authority, a product does not fall below merchantable

15   quality based on a single safety incident when the product is otherwise capable of safe use.

16   Accordingly, the Court grants Whirlpool's motion to dismiss Plaintiff's Song-Beverly Act

17   claim with leave to amend.

18        **3.    Plaintiff Fails to State a Claim Under the Unfair Competition Law.**

19        Whirlpool moves to dismiss on the grounds that Plaintiff failed to adequately allege that

20   it engaged in unlawful, unfair, and fraudulent conduct in violation of the UCL. The UCL

21   "prohibits unfair competition by means of any unlawful, unfair or fraudulent business practice."

22   Cal. Bus. & Prof. Code §§ 17200 *et seq.* "Each prong of the UCL is a separate and distinct

23   theory of liability." *Birdsong*, 590 F.3d at 959 (quoting *Kearns v. Ford Motor Co.*, 567 F.3d

24   1120, 1127 (9th Cir. 2009)).

25        **a.    Plaintiff Fails to State a Claim for Unlawful Business Practices.**

26        Plaintiff alleges that Defendant violated the unlawful business practices prong of the

27   UCL because it violated the CLRA and Song-Beverly Act . The UCL "borrows violations of

28   other laws and treats them as unlawful practices that the unfair competition law makes

12

United States District Court

For the Northern District of California

1    independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163,

2    180 (1999). "The California Supreme Court has held that the UCL's 'coverage is sweeping,

3    embracing anything that can properly be called a business practice and that at the same time is

4    forbidden by law.'" *Wilson*, 668 F.3d at 1140 (quoting *Cel-Tech Commc'ns*, 20 Cal. 4th at 180).

5    "Violation of almost any federal, state, or local law may serve as the basis for a UCL claim."

6    *Saunders v. Superior Ct.*, 27 Cal. App. 4th 832, 838-39 (1994). While violations of other laws

7    are independently actionable under the unlawful prong of the UCL, under the Court's analysis,

8    Plaintiff fails to plead violations of the CLRA or the Song-Beverly Act. Plaintiff's unlawful

9    business practices claim is based upon violation of these laws. (FAC, ¶ 49.) Accordingly, the

10   Court finds that Plaintiff fails to state a claim for unlawful business practices under the UCL.

11            **b.    Plaintiff Fails to State a Claim for Unfair Business Practices.**

12        Plaintiff asserts that the allegations that Whirlpool has engaged in an ongoing practice of

13   selling defective products with knowledge of the defect and knowledge that the defect could

14   cause injury, are sufficient to state a claim for unfair business practices. (FAC ¶¶ 34, 38-39, 50,

15   52.) There are two competing tests for defining "unfair" under the UCL, "none of which has yet

16   been adopted as controlling by the California Supreme Court or the Ninth Circuit in the context

17   of consumer fraud." *Pirozzi v. Apple, Inc.* 966 F. Supp. 2d 909, 921 (N.D. Cal. 2013).

18   "California appellate courts disagree on how to define an 'unfair' act or practice in the context

19   of a UCL consumer action." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010).

20   Some courts adhere to a balancing test which requires the plaintiff to prove facts that the harm

21   to the consumer outweighed the utility of the business practice. *See id.* at 1205. This test

22   examines whether the business practice is "immoral, unethical, oppressive, unscrupulous, or

23   substantially injurious to consumers." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App.

24   4th 247, 257 (2010). The alternative test "requires a plaintiff to show that a practice violates

25   public policy as declared by 'specific constitutional, statutory, or regulatory provisions.'" *Id.*

26   (quoting *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002)). "Plaintiffs must set

27   forth more than conclusory allegations that mirror the elements of the [UCL] claim." *Stearns*,

28   2009 WL 1635931, at *17.

United States District Court

For the Northern District of California

"The failure to disclose a defect that a manufacturer does not have a duty to disclose, *i.e.*, a defect which it is not aware, does not constitute an unfair or fraudulent practice" under the UCL. *Wilson*, 668 F.3d at 1145 n.5. Plaintiff alleges that Whirlpool "engaged in an ongoing practice of selling the defective products with knowledge that defects could cause grievous bodily injury" and that Whirlpool failed to disclose the alleged defects and thereby fraudulently deceived reasonable consumers. (*See* FAC, ¶¶ 50-51.) Plaintiff asserts that these allegations are sufficient to state a claim for unfair business practices. Plaintiff does not explain, however, how Defendant's conduct would constitute unfair business practices in the absence of Defendant's knowledge of the alleged defect at the time of sale.

Plaintiff cites two California district court cases to show that the allegations are sufficient to state a claim for unfair business practices. However, these cases can be distinguished from the present matter because in these cases, there were sufficient allegations that defendants had prior knowledge of their defective products. *See Horvath v. LG Electronics Mobilecomm U.S.A., Inc.*, 2012 WL 2861160, at *11 (S.D. Cal. Feb. 13, 2012) (denying motion to dismiss unfair business practices claim where plaintiff sufficiently alleged that defendant sold defective phones and misled plaintiff after learning of the defect); *see also Aguila v. Gen. Motors LLC*, 2013 WL 3872502, at *7 (E.D. Cal. July 25, 2013) (denying motion to dismiss unfair business practices claim where plaintiff sufficiently alleged that defendant knew it was installing defective parts).

The Court's analysis of Plaintiff's CLRA claim is premised upon the finding that Plaintiff has not adequately alleged facts that indicate Defendant's knowledge of the alleged defect and Defendant's duty to disclose the alleged defect. Accordingly, Plaintiff is not able to state a claim under the unfair business practices prong of the UCL.

      **c.**     **Plaintiff Fails to State a Claim for Fraudulent Business Practices.**

Plaintiff alleges that Whirlpool's conduct was "fraudulent and likely to deceive reasonable consumers" because it has "omitted and/or failed to disclose . . . material facts regarding the Subject Ovens' tendency to cause the roll-out racks to slip and dislodge" and the safety hazard that is the result of this omission and defect. (FAC, ¶ 51.) Plaintiff further asserts

1    that Whirlpool had a duty to disclose these facts. (*Id.*) "To state a claim under the UCL's

2    'fraudulent' prong, plaintiff's must plead that a defendant's allegedly fraudulent business

3    practice is one in which members of the public are likely to be deceived." *Mui Ho v. Toyota*

4    *Motor Corp.*, 931 F. Supp. 2d 987, 1000 (N.D. Cal. 2013).

5          In *Mui Ho*, the court found that the plaintiffs stated a fraudulent business practices claim

6    when they sufficiently plead a violation of the CLRA based on a duty to disclose. *Id.* Similarly

7    to *Mui Ho*, Plaintiff's fraudulent claim is based on Whirlpool's alleged failure to disclose the

8    alleged defect prior to the sale of the oven. *See id.* However, here the Court has found that

9    Plaintiff's allegations do not suffice to create a legal duty to disclose because Plaintiff has failed

10    to adequately allege that Whirlpool had knowledge of the alleged defect prior to the sale of the

11    Subject Oven. Whirlpool did not have a duty to disclose a defect of which it was unaware. *See*

12    *Wilson*, 668 F.3d at 1145 n.5; *see also In re Sony HDTV*, 758 F. Supp. 2d at 1095 ("Sony had

13    no duty to disclose facts of which it was unaware.")

14          The Court grants Whirlpool's motion to dismiss Plaintiff's UCL claims with leave to

15    amend.

16                          **CONCLUSION**

17          For the foregoing reasons, the Court GRANTS Whirlpool's motion to dismiss with leave

18    to amend. Should Plaintiff pursue his claims, Plaintiff shall file and serve his amended pleading

19    by no later tan August 31, 2015. Whirlpool shall answer or otherwise respond within the time

20    required under the Federal Rules of Civil Procedure.

21          **IT IS SO ORDERED.**

22

23    Dated: August 5, 2015

24                                JEFFREY S. WHITE

24                                UNITED STATES DISTRICT JUDGE

25

26

27

28